1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8  WASHINGTON FEDERAL, a federally
   chartered savings association,

9                              Plaintiff,

10        v.

11

12 COUNTRYWIDE HOME LOANS, INC.
   (d/b/a BANK OF AMERICA HOME
13 LOANS), BANK OF AMERICA
   CORPORATION, and BANK OF
14 AMERICA, N.A.,

15                            Defendants.

CASE NO. C12-1820 RSM

ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS COUNTS V AND VI OF
PLAINTIFF'S AMENDED
COMPLAINT

16                        **I. INTRODUCTION**

17        This matter comes before the Court upon Defendants' Motion to Dismiss Counts V and

18 VI of the Amended Complaint.  Dkt. # 31.  For the reasons set forth below, Defendants' motion

19 shall be GRANTED.

20                        **II. BACKGROUND**

21        This case arises from the purported breach of a loan purchase agreement between

22 Plaintiff Washington Federal and Defendant Countrywide Home Loans, Inc. ("Countrywide"). In

23 2004, Washington Federal sought to increase its loan assets through the purchase of loans

24

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS V AND VI OF PLAINTIFF'S
AMENDED COMPLAINT - 1

1  comparable to its own loan portfolio. Dkt. # 12. On December 30, 2004, Washington Federal

2  contracted to purchase and Countrywide contracted to sell 30-year fixed rate jumbo mortgage

3  loans pursuant to a standing Mortgage Loan Purchase and Servicing Agreement (the "MLPSA"

4  filed under seal as Dkt. # 1-1, and governed by California law under § 8.09). The MLPSA

5  contained representations and warranties by Countrywide addressing the quality of the loans. In

6  2008, the Bank of America Defendants (collectively "BOA") acquired Countrywide and

7  assumed Countrywide's obligations under the MLPSA.

8       In 2009, Washington Federal observed unsatisfactory loan performance by the loans

9  purchased from Countrywide. It ultimately requested that Defendants provide Washington

10 Federal with copies of the borrower loan files. Washington Federal alleges that its review of the

11 files revealed that many of the mortgage loans had not been underwritten in accordance with

12 contractual requirements set out in the MLPSA. It argues that the breach of the representations

13 and warranties materially and adversely affected the value of the mortgage loans. Washington

14 Federal notified Defendants of the alleged breaches and requested that they repurchase the loans.

15 Defendants acknowledged receipt of the repurchase letter notices but disagreed with Washington

16 Federal's asserted breaches. They refused to repurchase the loans.

17      Countrywide was also to "service and administer Mortgage Loans sold…in accordance

18 with the terms [of the MLPSA]." Dkt. # 12, p. 9. Washington Federal asserts that Countrywide

19 breached various contractual duties in servicing the loans and that it has suffered financially as a

20 result. The amended complaint alleges the following six claims: (1) breach of contractual loan

21 origination and sale obligations, (2) monetary and (3) equitable relief for breach of contractual

22 loan servicing and administrative obligations, (4) accounting, (5) breach of the implied covenant

23 of good faith and fair dealing, and (6) breach of fiduciary duty in servicing obligations. Dkt. #

24

12, ¶¶ 125-158. Defendants filed this motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss two of the six claims: Count V for breach of the implied covenant of good faith and fair dealing and Count VI for breach of fiduciary duty. Dkt. # 31.

Defendants seek dismissal of Counts V and VI on the basis that the claims are precluded under the express terms of the parties' contractual agreement. With respect to Count V, they contend that Washington Federal's claim for breach of the implied covenant is not cognizable because it is duplicative of other claims alleging breach of the same contractual provisions. As to Count VI, Defendants contend that because the MLPSA's express terms do not designate Countrywide as a fiduciary, Washington Federal cannot sustain a claim for breach of fiduciary duties.

## III. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 8(a) requires a plaintiff to set forth in its complaint "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' [] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78, (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* A claim is facially plausible if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. If a claim does not meet this standard, it will be dismissed.

**B.  Analysis**

Defendants initially sought a determination under California law—based on a straightforward interpretation of Washington Federal's amended complaint—that Washington Federal's claim for contractual breach of the implied covenant does not provide an independent basis for recovery because it is duplicative of its other contract claims. Under California law, "every contract…imposes on each party a duty of good faith and fair dealing in its performance and its enforcement." *McClain v. Octagon Plaza*, LLC, 71 Cal. Rptr. 3d 885, 896 (Cal. Ct. App. 2008) (internal quotation omitted). Generally, however, a claim for breach of the implied covenant "must go beyond the statement of a mere contract breach." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc*., 272 Cal. Rptr. 387, 400 (Cal. Ct. App. 1995). And, a claim for contractual breach of the implied covenant is duplicative if it relies on the same alleged acts and "simply seek[s] the same damages or other relief already claimed in a companion contract cause of action." *Id*.

Washington Federal effectively concedes that a claim for contractual breach of the implied covenant would be duplicative; however, it contends that an independent claim for tortious breach of the implied covenant is cognizable under California law and that it has plausibly plead a claim for tortious breach. *See* Dkt. # 34, p. 3. It contends that it may maintain an independent claim for tortious breach of the implied covenant because Countrywide acted in a fiduciary capacity under the MPLSA, recognizing that "no cause of action for the tortious breach . . . can arise unless the parties are in a special relationship with fiduciary characteristics." *Pension Trust Fund for Operating Engineers v. Federal Ins. Co*., 307 F.3d 944, 955 (9th Cir. 2002) (internal quotation omitted). Since each of the claims at issue here require a special or fiduciary relationship between the parties, the two related issues before the Court are whether Washington Federal pled sufficient facts to infer (1) that Countrywide and Washington Federal

had a special relationship with fiduciary characteristics to support a claim for tortious breach of the implied covenant, and (2) that they had a fiduciary relationship to support a claim for breach of fiduciary duty. Each is addressed in turn.

1. Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing

As noted above, a claim for tortious breach of the implied covenant is cognizable only in instances where the parties had a special relationship with fiduciary characteristics. A special relationship with fiduciary characteristics may be found where one or more of the following exists: (1) unequal bargaining strength between the parties, (2) inadequate contract damages or other remedies, (3) adhesive contract provisions, and (4) circumstances where the damaged party entrusted financial dependence or personal security to the other party. *See Mitsui Mfrs. Bank v. Superior Court,* 260 Cal. Rptr. 793, 796 (Cal. Ct. App. 1989). Generally, the tort remedy for breach of the implied covenant is limited to insurance cases where courts have found that a "special relationship" exists between insurers and insureds. *Careau*, 272 Cal. Rptr. at 400.

The parties dispute whether a claim for tortious breach of the implied covenant is recognized beyond the confines of insurance contracts. As Defendants note, the California Supreme Court recognizes insurance contracts as the single exception to the general rule that compensation for breach of the implied covenant is limited to contract remedies. *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43-44, 980 P.2d 407 (1999). It stated "[a]s our decisions acknowledge, tort recovery in [the insurance context] is considered appropriate for a variety of policy reasons. Unlike most other contracts for goods and services, an insurance policy is characterized by elements of adhesion, public interest, and fiduciary responsibility." *Id.* at 44.

Thus, whether this case warrants departure from the general rule that tort recovery is unavailable depends on whether the loan servicing agreement is like an insurance policy or "necessitates the interests of social policy." *Id.* at 60. Plaintiff argues that Defendants acted as

1   both the sellers and the servicers of the loans, and that they not only made affirmative

2   representations as to the characteristics of the loans sold, but also purported to maintain the

3   records substantiating those representations and were to service the loans in the best interest of

4   Washington Federal. Defendants contend that Plaintiff entered into the MLPSA for its own

5   commercial advantage rather than peace of mind. Furthermore, they argue that contractual

6   remedies are sufficient to cover any alleged losses, and that Washington Federal had ample

7   bargaining power in negotiating the terms of the MLPSA. Finally, Defendants argue that they

8   were not offering a public service, similar to that of an insurer.

9          First, the relationship between Washington Federal and Countrywide was nothing like

10  that of an insurer and insured. Insureds face a unique economic dilemma when an insurer

11  breaches a contract because insureds who purchase policies are generally seeking protection

12  against a disastrous event. *See Cates*, 86 Cal.Rptr.2d. at 865. Here on the other hand, Washington

13  Federal sought to increase its loan assets through the purchase of loans comparable to its own

14  loan portfolio for its own commercial advantage, and therefore was only risking financial loss.

15         Second, no social policy considerations have been identified that favor tort recovery in

16  this context. Washington Federal and Countrywide were acting in their capacity as large, highly-

17  sophisticated lending institutions when they signed the MLPSA. Neither the language of the

18  MLPSA, nor Washington Federal, suggests that Countrywide possessed greater bargaining

19  power or undue influence. As noted by the California Supreme Court, "parties of roughly equal

20  bargaining power are free to shape the contours of their agreement and to include provisions for

21  attorney fees and liquidated damages in the event of breach." *Freeman and Mills, Inc., v. Belcher*

22  *Oil Co*., 44 Cal. Rptr. 2d. 420, 423 (1995). Washington Federal, having participated in this type

23  of loan purchasing agreement with Countrywide before, had the expertise to recognize the risks

24

1 involved in such a transaction and was free to include various provisions for damages in the

2 event of a breach. Moreover, as discussed below, the relationship between Washington Federal

3 and Countrywide did not give rise to fiduciary responsibilities. Because the nature of the parties'

4 loan servicing agreement does not warrant departure from the general rule that tort recovery is

5 unavailable in most breach of contract actions, Plaintiff's breach of the implied covenant claim

6 shall be dismissed.

7    2.   Breach of Fiduciary Duty

8        Plaintiff claims that Defendants breached their "special and fiduciary duties owed to

9 Washington Federal based on their relationships as agent/principal and trustee/beneficiary." Dkt.

10 # 34, p. 4. A claim for breach of fiduciary duty has three elements: (1) the existence of a

11 fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach.

12 *Mendoza v. Rast Produce Co*., 45 Cal. Rptr. 3d. 525, 533 (Cal. Ct. App. 2006). The essence of a

13 fiduciary or confidential relationship is that "the parties do not deal on equal terms, because the

14 person in whom trust and confidence is reposed and who accepts that trust and confidence is in a

15 superior position to exert unique influence over the dependent party." *Barbara A. v. John G.,*193

16 Cal. Rptr. 422, 432 (Cal. Ct. App. 1983). Defendants contend that, by the express terms of the

17 MLPSA, Countrywide was an "independent contract servicer," and accordingly accrued no

18 fiduciary responsibilities. Conversely, Washington Federal argues that agent/principle and

19 trustee/beneficiary relationships impose a fiduciary duty by operation of law.

20        Although the question of whether a fiduciary relationship exists is ordinarily a question

21 of fact (*In re Daisy Sys. Corp.,* 97 F.3d 1171, 1178 (9th Cir. 1996)), "fiduciary duties among

22 loan participants depend upon the terms of their contract." *First Citizens Fed. Savings and Loan*

23 *Ass'n v. Worthen Bank and Trust Company, N.A*., 919 F.2d 510, 513 (9th Cir. 1990)

24 ("*Worthen*"). "It is appropriate to look to the terms of the Agreement because '[u]nlike the

1   automatic, status-based fiduciary duty which exists, for example, between attorney and client,

2   fiduciary duties among loan participants depend upon the terms of their contract.'" *S. Pac. Thrift*

3   *& Loan Assn. v. Sav. Assn. Mortgage Co.*, 70 Cal. App. 4th 634, 638, 82 Cal. Rptr. 2d 874

4   (1999) (quoting *Worthen*, 919 F.2d at 513). Moreover, "[i]n the context of loan participation

5   agreements among sophisticated lending institutions…fiduciary relationships should not be

6   inferred absent unequivocal contractual language." *Worthen*, 919 F.2d at 514.

7        In *Encore Bank, N.A. v. Bank of America, N.A.*, Civil Action No. H-11-3552, 2013 WL

8   264371 (S.D. Texas Jan. 23, 2013), the court considered the same issue under virtually identical

9   circumstances. There, Encore Bank alleged that BOA undertook its obligations under the

10  MLPSA for Encore's benefit and that BOA failed to protect Encore Bank as its beneficiary. *Id.* at

11  * 15. The court rejected the argument that a fiduciary duty is imposed as a matter of law "on a

12  commercial agreement between two financial institutions to purchase loans in exchange for an

13  agreement to provide loan servicing obligations in return for fees." *Id.* at 16. Although Encore's

14  complaint was replete with "buzz words" attempting to assign a fiduciary relationship between

15  the parties, the court found that Encore failed to plead any facts demonstrating that BOA agreed

16  to undertake fiduciary responsibilities and dismissed the breach of fiduciary duty claim. *Id.*

17        Similarly here, there is no mention in the MLPSA of any fiduciary duties assigned to

18  Countrywide. In fact, the MLPSA provides that "Countrywide, as an "independent contract

19  servicer," shall service and administer Mortgage Loans sold pursuant to the agreement." Dkt. #

20  1-1, MLPSA § 4.01. The agreement obligated Countrywide to service and administer loans "in

21  accordance with the customary and usual standards of practice of prudent mortgage servicers."

22  *Id.*, MLPSA §§ 4.01, 4.02. As noted in *Worthen*, "[t]hese provisions are more indicative of a

23  typical business relationship among equally sophisticated parties dealing at arm's length than of

24

a fiduciary relationship." 919 F.2d at 514. Banks and savings/lending institutions engaged in commercial transactions usually deal with one another at arm's length and not as fiduciaries. In the absence of contractual language assigning fiduciary responsibilities to one party, courts generally will not infer a fiduciary relationship. *Southern Pacific*, 70 Cal. App. 4th at 640; *Worthen*, 919 F.2d at 514. In this instance, the language of the MLPSA unequivocally states that that Countrywide was to act as an independent contract servicer. In addition, Plaintiff has not alleged facts from which the Court could infer that Countrywide agreed to assume a fiduciary role under the MLPSA. Accordingly, Plaintiff's breach of fiduciary duty claim shall be dismissed with prejudice.

## IV. CONCLUSION

The Court, having considered Defendants' motion, Plaintiff's response thereto, the reply, and the remainder of the record, hereby finds and ORDERS:

(1)     Defendants' Motion to Dismiss (Dkt. # 31) is GRANTED. Counts V and VI of Plaintiff's Amended Complaint are DISMISSED with prejudice.

(2)     The Clerk of the Court is directed to forward a copy of this Order to all counsel of record.


DATED this 23rd day of May 2013.



RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE